
Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | P. Michael Mahoney | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 50333 | **DATE** | 7/15/2002 |
| **CASE TITLE** | GOLDEN vs. BARNHART | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] In accordance with the attached Memorandum Opinion and Order, Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Enter attached Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | JUL 16 2002 | | 18 |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | | |
| ✓ | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | 02 JUL 15 PM 3:36 | 7/15/2002 | | |
| | | FILED-XD | date mailed notice | | |
| tml | courtroom deputy's initials | | gg | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| ANITA GOLDEN, FOR <br> BRITTANY GOLDEN | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Case No. 01 C 50333 |
| v. | ) <br> ) | Magistrate Judge <br> P. Michael Mahoney |
| JO ANNE B. BARNHART, <br> COMMISSIONER OF SOCIAL <br> SECURITY, | ) <br> ) <br> ) <br> ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Brittany Golden, (Plaintiff) through her Mother, Anita Golden, seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner). See 42 U.S.C. §§ 405(g), 1383(c)(3). The Commissioner's final decision denied Plaintiff's application for Supplemental Security Income (SSI) pursuant to Section 223 of the Social Security Act (the Act). 42 U.S.C. §1381(a). This matter is before the Magistrate Judge pursuant to consents filed by both parties on January 9, 2002. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

I. BACKGROUND

Plaintiff filed an application for SSI benefits on April 21, 1999, alleging disability beginning on March 15, 1999. (Tr. 12). Plaintiff's application for benefits was denied on July 15, 1999. (Tr. 73). On July 27, 1999, Plaintiff filed a request for reconsideration. (Tr. 76). Plaintiff's request for reconsideration was denied on October 20, 1999. (Tr. 78). Plaintiff then filed a request for a

hearing before an Administrative Law Judge (ALJ) on November 3, 1999. (Tr. 82). Plaintiff (with her mother) appeared, with counsel, before the ALJ on March 13, 2001. (Tr. 96). In a decision issued May 16, 2001, the ALJ found that Plaintiff is not disabled under the Act . (Tr. 12). On May 21, 2001, Plaintiff requested a review of the ALJ's decision by the Appeals Council. (Tr. 7). On August 31, 2001, the Appeals Council denied Plaintiff's request for review. (Tr. 5).

## II. FACTS

Plaintiff was born on March 24, 1989, and was eleven years old at the time of the hearing. (Tr. 34). She alleges she was disabled on March 15, 1999, due to attention deficit hyperactivity disorder and stomach pains. Plaintiff's mother, Anita Golden, testified on behalf of Plaintiff at the hearing before the ALJ. In May 1999, Brittany was referred to the Janet Wattles Mental Health Center by her school counselor and family physician for depression. (Tr. 182). Ms. Golden testified that Plaintiff often gets into a sad mood where she cries, sits alone in a dark room, and does not respond to anyone for a few hours. (Tr. 67). Brittany indicated that she had two crying episodes the week of the hearing. Ms. Golden stated that Plaintiff's current medication is helping because she does not cry that much anymore nor does she get into a sad mood quite as often. (Tr. 50, 58). Notwithstanding her crying spells, Plaintiff stated she enjoys activities such as skating, watching television and attending movies with her friend on weekends. (Tr. 37, 45).

Ms. Golden testified that Brittany has problems with math and is about a year behind in reading. (Tr. 58, 63). Ms. Golden stated she was contacted by the school the previous semester because Plaintiff had some behavioral problems. (Tr. 58). Ms. Golden stated Plaintiff recently had problems getting along with other kids on the bus, but pointed out that Plaintiff is not a discipline

2

problem at home. (Tr. 64, 65, 67).

Jane Phelps, Plaintiff's fourth grade teacher at Hillman School, reported that before medication was given to Plaintiff she was not able to comprehend simple instructions given in class. (Tr. 141). As a result, she would get upset with herself and take it out on others. (Tr. 141). Ms. Phelps reported that since Brittany has been on medication she is able to follow orders, comply with class rules, adjust to new or unusual instructions, behave herself in uninstructed situations, and interact appropriately with peers. (Tr. 141).

Ms. Phelps reported that before taking medication Plaintiff did not complete tasks, had much difficulty concentrating, and would become frustrated and give up. (Tr.140). With medications, Plaintiff was able to complete tasks if allowed enough time, tried hard, concentrated, had consistent grades, improved skills, and felt proud of her achievements. (Tr. 140). Brittany indicated she completes her homework assignments without prompting from her mother when she gets home from school each day. (Tr. 60). Ms. Golden testified that Plaintiff takes a bath and goes to bed at night without being told to do so. (Tr. 61). Brittany also prepares microwave meals or boils noodles for dinner by herself. (Tr. 62). Ms. Golden reported Plaintiff takes turns with her 15 year-old sister washing the dishes and straightening the living room and bathroom. (Tr. 66). Ms. Golden stated that she has to remind Plaintiff to do her chores and when Plaintiff does not do a thorough job, she cleans up behind her. (Tr. 66). Plaintiff does not know her mother has to clean up behind her because Ms. Golden does not want to discourage Plaintiff. (Tr. 66). Plaintiff's student profile indicates that she needs "much positive reinforcement for her efforts". (Tr. 148).

## III. MENTAL HEALTH HISTORY

On March 18, 1999, Plaintiff was seen at Crusader Clinic by Dr. Anselma Ramilo for constipation and problems in school. (Tr. 179). At this time Plaintiff was in the fourth grade and her mother indicated to Dr. Ramilo that because of her problems in school Plaintiff may be retained in that grade for another year (Tr. 179). During the examination, Plaintiff was alert, fidgety and interrupted a lot. (Tr. 179). Dr. Ramilo diagnosed Brittany with Attention Deficit Hyperactivity Disorder (ADHD), mixed type, with the possibility of learning disability. (Tr. 179). Plaintiff was prescribed 10mg of methylphenidate per day and advised to begin behavior modification and psychotherapy. (Tr. 179).

On May 13, 1999, Plaintiff visited Janet Wattles Mental Health Center for a mental health assessment for depression. (Tr. 182). Plaintiff reported that she cries easily and frequently, and does not get along with her sister. (Tr. 182). Plaintiff's family history indicated that her maternal grandmother was frequently depressed and that both parents were drug users. (Tr. 182). Plaintiff's attitude was cooperative, mood was calm, affect during the interview was labile, and she cried on two separate occasions. (Tr. 183). Brittany's attention and concentration were good during the examination and her long-term and short-term memory were intact. (Tr. 183). Her fund of information was average or below average, while her judgment was age-appropriate, even though she had difficulty starting thoughts. (Tr. 183). Plaintiff reported some suicidal thoughts and had a tendency to eat more when depressed. (Tr. 183). Plaintiff was diagnosed with dysthymia. (Tr.185). Plaintiff was referred for individual and family counseling as well as a psychiatric evaluation. (Tr.185).

June 16, 1999, Plaintiff was administered the Wechsler Intelligence Scale for Children-Third

4

Edition (WISC-III). (Tr. 201). Plaintiff obtained a verbal IQ of 79, a performance IQ of 69 and a full scale IQ of 75, reflecting borderline intellectual ability. (Tr. 202). Plaintiff's ability to sustain attention, concentrate, and exert mental control was low average. (Tr. 202). Her general verbal abilities were in the borderline range and general nonverbal abilities were in the intellectually deficient range. (Tr. 203). Plaintiff was diagnosed with borderline intellectual functioning. (Tr. 203).

On June 21, 1999, Plaintiff was evaluated by Dr. Carol Craig at Janet Wattles Center (Tr. 187). Plaintiff had been taking Ritalin, which reportedly improved her attentiveness and grades in school. (Tr. 187). Plaintiff cried easily throughout the examination. (Tr. 188). She was alert, oriented to person, place and time and spoke logically and coherently. (Tr. 188). Brittany demonstrated no increased psychomotor activity (Tr. 188). Dr. Craig diagnosed major depression, single episode; history of dysthymia; history of ADHD, inattentive type; and history of learning disability NOS. (Tr. 189). Dr. Craig recommended Plaintiff take Zoloft, continue using Ritalin and continue individual counseling (Tr. 189).

On June 29, 1999, a childhood disability evaluation form was completed by state agency psychologist, D. G. Hudspeth, Psy. D. (Tr. 175). Dr. Hudspeth listed a history of depression, ADHD and learning disability as established physical and mental impairments in Plaintiff's medical summary. (Tr. 175). Dr. Hudspeth also concluded that Plaintiff's impairments are severe, but do not meet, medically equal, or functionally equal the severity of a listed impairment. (Tr. 175). Plaintiff was not found to have limitations of specific functions, limitations related to episodic impairments or limitations related to treatment or medication side effects. (Tr. 176). Plaintiff was found to have less than marked limitation in her cognitive/communicative ability, social functioning

and concentration, persistence or pace; and no limitation in her motor or personal functioning. (Tr. 177). Dr. Hudspeth noted that Plaintiff attended regular classes in school, and that Plaintiff's teacher reported improved functioning with medication (Tr. 178).

On August 30, 1999, Sam Kimel, a case worker at the Janet Wattles Center completed a clinical summary on Plaintiff. (Tr. 192). Mr. Kimel reported that Plaintiff's counseling sessions have focused on helping her identify and express her emotions verbally rather than by crying or having a tantrum. (Tr. 193). Mr. Kimel also reported that Plaintiff made progress with treatment, including improved mood, fewer crying episodes and no reports of suicidal statements. (Tr. 193). Mr. Kimel recommended ongoing treatment because Plaintiff was still easily upset by others and did not readily express her emotions. (Tr. 193).

The Disability Determination Bureau referred Plaintiff to Dr. Robert Gordon for a psychological evaluation on Sept. 8, 1999. (Tr. 207). At this time, Plaintiff was ten years-old and in the fifth grade. (Tr. 207). Dr. Gordon determined Plaintiff was operating in the borderline range of intelligence based on prior psychological tests. He reported that Plaintiff's general fund of knowledge and judgment were fair. He also indicated that her math abilities were marginal and her abstracting abilities were normal. (Tr. 207-08). Dr. Gordon's diagnosis was ADHD in remission and adjustment disorder with depressed mood. (Tr. 208).

A clinical summary of Plaintiff's progress was completed on September 20, 2000, by Shelly Patchett, a social worker at the Janet Wattles Center. (Tr. 209). Ms. Patchett reported that Plaintiff continued to experience difficulty managing depressed moods. (Tr. 210). Plaintiff appeared to have a positive response to the medication prescribed by Dr. Craig because her crying episodes decreased. (Tr. 210). Plaintiff continued to experience low self esteem and had difficulty making decisions and

using good judgment when her mood was depressed. (Tr. 210). Plaintiff continued treatment at Janet Wattles Center through February 2001. (Tr. 219, 225).

IV. **FRAMEWORK FOR DECISION**

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and accordingly denied his application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382(c)(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through three steps in determining whether a child claimant is disabled. 20 C.F.R. §416.924(a). The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; and (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments.

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work

7

experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[1] A severe impairment for a child is one which as an impairment or combination of impairments, causes more that a minimal functional limitation. 20 C.F.R. § 416.924(b). In making the determination as to whether a child's impairment is severe the Commissioner considers the claimants impairment(s) in relation to his or her age. 20 C.F.R. § 416.924b(a)(1). If the claimant suffers from a severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). If the child claimant does not have an impairment(s) that meets the requirements of the listing, the Commissioner must determine whether the impairment(s) are medically equivalent in severity to an impairment(s) in the listing. 20 C.F.R. § 416.926a(a). In determining whether the claimant meets the listing or is medically equivalent to the listing the Commissioner considers whether the impairment(s) prevents the claimant from functioning independently, appropriately and effectively in an age appropriate manner. 20 C.F.R. § 416.926a(a).

---

[1] The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

If the claimant is found to suffer severe impairment(s) that meet or are medically equivalent to the listings, disability must be found and the inquiry is ended. 20 C.F.R. § 404.1520(d).

If the claimant's impairment(s) is found not to meet or be medically equivalent to the listing, then the Commissioner must do an individualized functional assessment to determine whether the claimant has an impairment or combination of impairments that would be of comparable severity to an impairment that would disable an adult. 20 C.F.R. § 416.924d(a). The Commissioner must consider the nature of the impairment(s), the claimant's age and ability to be tested at that age, the ability to perform age appropriate daily activities and other relevant factors. 20 C.F.R. §416.924d(a). The functional areas used to measure the severity of a child's impairment (age 6-12) are cognitive/communicative function, social function and personal/behavioral function. 20 C.F.R. Part 404, Subpart P, Appx 1 (Listings) § 112.00(C)(3).

### IV. ANALYSIS

The court will proceed through the three step analysis in order.

A. Step One: Is the claimant currently engaged in substantial gainful activity?

In performing the Step One Analysis the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time relevant to his decision issued on July 30, 1999. (Tr. 12).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and forty dollars per month for years after January 1, 2001. (20 C.F.R. § 1574 (b) (2) Table 1, as modified by 65 FR 82905, December 29, 2000).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and

the court finds no reason to disturb this finding. The ALJ's determination as to Step One of the Analysis is affirmed.

B. Step Two: Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis the ALJ found Plaintiff suffered from a severe impairment. Specifically, the ALJ found that Plaintiff suffered from attention deficit hyperactivity disorder. (Tr. 16).

Substantial evidence exists to support the ALJ's determination that Plaintiff suffers from a severe impairment. This finding is not challenged by either party and the court finds no reason to disturb it. The ALJ's finding as to Step Two of the Analysis is affirmed.

C. Step Three: Does claimant's impairment meet or medically equivalent to an impairment in the Commissioner's listing of impairments?

In performing the analysis for Step Three the ALJ determined that Plaintiff's impairments do not meet or equal any impairment in Appendix 1 to Subpart P of Regulations number 4. (Tr. 16). The ALJ found that the Plaintiff's impairment does not produce any limitation which is the same as a specific functional limitation included in the listings. (Tr. 16).

Plaintiff contends that the ALJ erred in not finding that Plaintiff's impairments meet the listing in §112.05(D) for mental retardation. (Pl.'s Memorandum at 5). Section 112.05(D) of the children's Listings of Impairments, provides as follows:

> §112.05 *Mental Retardation*: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
> ....
> ...D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation

of function;

Plaintiff contends that §112.05(D) of the listing of impairments, which refers to mental retardation, does not require a separate showing of deficits in adaptive functioning. She alleges that her WISC-III performance IQ score of 69 coupled with her diagnosis of depression and ADHD confirms her subaverage intelligence and imposes an additional and significant limitation of function, thereby satisfying the requirement of the Listing. (Pl's Memorandum at 6).

The introductory paragraph in §112.05 characterizes mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning", while sub-section D states that the required level of severity is a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function". 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listings) §112.05(D). The Social Security regulations provide that if the impairment satisfies the diagnostic description in the introductory paragraph and any one of the six sets of criteria, then the child's impairment will meet the listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §112.00(A).

Although the ALJ determined the Plaintiff's performance IQ score of 69 falls within the range set forth in Listing 112.05(D), the Listing requires a diagnosis of mental retardation as well as deficits in adaptive functioning. *Id.* The ALJ noted that the criteria for mental retardation under the Diagnositc and Statistical Manual of Mental Disorders-IV (DSM-IV) includes significantly subaverage intellectual functioning (an IQ of approximately 70 or below) and concurrent deficits or impairments in adaptive functioning in at least two skill areas such as communication, self-care, home living, social/interpersonal skills, and academic skills. (Tr. 18). The ALJ decided that mental retardation would not be diagnosed in an individual with an IQ lower than 70 unless there are

11

significant deficits or impairments in adaptive functioning. (Tr. 18). Adaptive functioning was noted by the ALJ as "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting". (Tr. 18). The Plaintiff failed to show either.

Even though Plaintiff's performance IQ score of 69 is considered subaverage intellectual functioning, the psychologist who administered the WISC-III exam diagnosed her with borderline intellectual functioning. (Tr. 203). During a subsequent psychological evaluation, Plaintiff was also determined to be operating in the borderline range of intelligence. (Tr.208). Provided that neither psychologist diagnosed Plaintiff as mentally retarded, the ALJ determined Plaintiff did not satisfy the requirement for significant subaverage intellectual functioning.

Evidence exists to support the position that Plaintiff does not have deficits in adaptive functioning. Plaintiff's School Activities Questionnaire completed by Ms. Foss, her sixth grade school counselor, indicated Plaintiff had the average attendance, attention span, concentration, and on-task behavior of a sixth grader. (Tr. 165). The questionnaire also stated that Plaintiff had the ability to complete assignments on time and respond to change of routine in a classroom environment like other sixth grade students. (Tr. 165). Plaintiff's report card dated January 19, 2001, indicates Plaintiff is passing all regular education classes except music. (Tr. 170). Testimony from Plaintiff and her mother also attest to Plaintiff's ability to prepare simple meals, do homework without prompting, complete chores, and enjoy social activities (Tr. 40-1, 44-8, 61-62). This evidence supports the ALJ's finding that Plaintiff does not at this time have any deficits in adaptive functioning. (Tr. 171-178).

Substantial evidence exists to support the ALJ's determination that Plaintiff's impairments

12

no reason to disturb it. The ALJ's finding as to Step Three of the Analysis is affirmed.

V. **CONCLUSION**

This court affirms the ALJ at each step of the analysis. For the above reasons, the Plaintiff's motion for judgment is denied. Defendant's motion for summary judgment is granted.

ENTER:

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 2/15/02

# United States District Court
## Northern District of Illinois
### Western Division

ANITA GOLDEN                **JUDGMENT IN A CIVIL CASE**

v.                                     Case Number: 01 C 50333

JO ANNE BARNHART

☐      Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■      Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Judgment is entered in favor of the defendant and against the plaintiff.

Michael W. Dobbins, Clerk of Court

Date: 7/15/2002

Gale L. Graeff, Deputy Clerk